**Reversed and Rendered, Petition for Writ of Mandamus Denied as Moot, and Opinion filed July 31, 2018.**



In the

# Fourteenth Court of Appeals

### NO. 14-17-00618-CV

## IN THE MATTER OF THE MARRIAGE OF LORI ELIZABETH RUSSELL AND CHARLES WAYNE RUSSELL

**On Appeal from the County Court at Law No. 2**
**Galveston County, Texas**
**Trial Court Cause No. 15-FD-1713**

### NO. 14-17-00787-CV

## IN RE CHARLES WAYNE RUSSELL

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**County Court at Law No. 2**
**Galveston County, Texas**
**Trial Court Cause No. 15-FD-1713**

# OPINION

The trial court entered a final decree of divorce, which it later modified on the motion for judgment nunc pro tunc of appellee Lori Elizabeth Russell. Appellant Charles Wayne Russell brings three related issues, arguing: (1) the trial court lacked jurisdiction to sign and enter the nunc pro tunc order and judgment that made substantive changes to the final divorce decree after the court lost its plenary power, rendering the nunc pro tunc order and judgment void ab initio; (2) the trial court erred in refusing to set aside its void nunc pro tunc order and judgment; and (3) the trial court erred in denying Charles's bill of review and refusing to set aside its void nunc pro tunc order and judgment. Charles filed both an appeal and a petition for writ of mandamus. On our own motion, we consolidated Charles's appeal (No. 14-17-00618-CV) and original proceeding (No. 14-17-00787-CV). We reverse the trial court's judgment nunc pro tunc and render judgment reinstating the original final decree of divorce. We deny Charles's petition for writ of mandamus as moot.

## I. BACKGROUND

Lori filed for divorce from Charles in July 2015. Charles counterfiled for divorce. They signed a mediated settlement agreement (MSA) on September 28, 2015, and filed it with the trial court. With regard to division of property, the MSA provided that Lori was to receive "$201,000.00 of Charles['s] 401(k) as of 9/28/2015" and that Charles was to pay Lori "$750.00 beginning October 1, 2015[,] for 12 consecutive months."

On November 20, 2015, the trial court held a prove-up hearing on the divorce. Lori and her attorney were present. Neither Charles nor his attorney was present. Lori testified that Charles and she had reached an agreement in the division of the community estate through the MSA filed with the court. The only particular item

discussed from the mediated property division was "the home," which Lori stated Charles was to receive. Lori asked the trial court "to approve [her] divorce." The trial court stated: "I am going to grant both the petition for divorce, as well as the request for a name change." The judge's docket sheet notation states: "Hrg held. Petition for Divorce proved-up. Entry date 12/4/15."

On November 23, 2015, the trial court signed and entered the final decree of divorce, which did not include the 401(k) award and only included one $750 payment in its division of the marital estate. The final divorce decree did not mention the MSA, except in the following provision: "To the extent that there may be a conflict between this Order and the Mediated Settlement Agreement from September 28, 2015, this Order controls." Both Charles and Lori approved and consented to the final divorce decree "as to both form and substance."[1] Neither party filed a post-trial motion to modify, correct, or reform the judgment. Neither party noticed an appeal from the final divorce decree. The trial court lost plenary power as of December 24, 2015.

On April 13, 2016, Lori filed a motion for judgment nunc pro tunc, arguing that the final divorce decree was "incorrect" pursuant to the MSA because (1) it did not award Lori "[a] portion of CHARLES[]'s retirement benefits in CELANESE AMERICAS RETIREMENT SAVINGS PLAN arising out of CHARLES[]'s employment with Celanese as of September 28, 2015, that portion being $201,000.00, together with any interest, dividends, gains, or losses on that amount arising since that date";[2] and (2) Charles's one-time $750 payment to Lori instead

---

[1] In her response brief, without citation to the record, Lori states that the record does not support that her counsel signed the final divorce decree "for [sic] her permission." However, the final divorce decree contains a signature for Lori Russell "by permission."

[2] Although the $201,000 amount is the same, this award language requested in the nunc pro tunc motion does not otherwise track the MSA. Lori's motion referred to Charles's "retirement benefits in CELANESE AMERICAS RETIREMENT SAVINGS PLAN," while the MSA referred

3

should have been monthly $750 payments beginning October 1, 2015, and ending October 1, 2016. A hearing was scheduled for April 26, 2016, on the motion for judgment nunc pro tunc; the record does not include a transcript of this hearing.[3] On May 4, 2016, the trial court signed and entered an order on the motion, ordering that judgment nunc pro tunc be entered. That same day, the trial court signed and entered judgment nunc pro tunc, which included Lori's two requested changes concerning the division of the marital estate.

On March 28, 2017, Charles filed a motion to set aside the court's May 4, 2016 judgment nunc pro tunc as void, or alternatively petition for bill of review and declaratory judgment to set aside the judgment as void.[4] A hearing was scheduled for June 28, 2017. During the hearing, counsel for Charles argued that the judgment nunc pro tunc was void because the trial court did not render judgment on or adopt the MSA at the prove-up hearing and first rendered judgment on the property division in the final divorce decree.[5] The trial court denied the motion and signed a written order that same day. This appeal by Charles followed. Charles also filed a petition for writ of mandamus "seeking essentially the same relief."

## II.  ANALYSIS

### A. Applicable law

This appeal focuses on the proper characterization of the May 4, 2016 judgment nunc pro tunc under Texas Rules of Civil Procedure 316 and 329b(f).

to Charles's "401(k)."

[3] The judge's docket sheet notation states: "Hrg held. Ct to take under advisement." According to Charles, it was a non-evidentiary hearing.

[4] As exhibits to this motion, Charles attached: the September 28, 2015 MSA, the transcript of the November 20, 2015 prove-up hearing, and the November 23, 2015 final decree of divorce.

[5] Charles also introduced the prove-up transcript.

4

### 1. Plenary power

A trial court has "plenary power to . . . vacate, modify, correct, or reform [its] judgment within thirty days after the judgment is signed." Tex. R. Civ. P. 329b(d); *In re A.M.C.*, 491 S.W.3d 62, 66 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Once plenary power has expired, a trial court's jurisdiction cannot be vested by party agreement or waiver. *See In re Vaishangi, Inc.*, 442 S.W.3d 256, 260–61 (Tex. 2014) (orig. proceeding) (per curiam); *In re S.A.H.*, 465 S.W.3d 662, 665 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

After the trial court's plenary power expires, it may not set aside its judgment except by timely bill of review. Tex. R. Civ. P. 329b(f); *see King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).[6] However, a nunc pro tunc judgment permits the trial court to "at any time correct a clerical error in the record of a judgment." Tex. R. Civ. P. 329b(f) (citing Tex. R. Civ. P. 316 ("Clerical mistakes in the record of any judgment may be corrected by the judge in open court according to the truth or justice of the case . . . .")).

### 2. Clerical errors

A clerical error is a discrepancy between the entry of a judgment in the record and the judgment that was actually rendered. *See Escobar v. Escobar*, 711 S.W.2d 230, 231–32 (Tex. 1986); *In re A.M.C.*, 491 S.W.3d at 67. A clerical error does not

---

[6] The Austin Court of Appeals recently reversed a trial court's revised final divorce decree issued after the trial court lost plenary power and reinstated the original final divorce decree, concluding that the trial court abused its discretion in granting the wife's bill of review. *See Wiegrefe v. Wiegrefe*, No. 03-16-00665-CV, 2017 WL 3908645, at *1, 3, 5–6 (Tex. App.—Austin Aug. 29, 2017, no pet.) (mem. op.) (wife argued she was entitled to revised decree where final divorce decree did not track parties' MSA and incorrectly awarded investment account to husband under circumstances where drafting mistake by husband's attorney in proposed decree was "mixed" with wife's negligence in discovering mistake). Lori did not file a bill of review here.

result from judicial reasoning or determination. *Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986) (per curiam); *Morris v. O'Neal*, 464 S.W.3d 801, 810 (Tex. App.— Houston [14th Dist.] 2015, no pet.).

Examples of clerical errors include an incorrectly stated date or damages amount, missing child-support amount or statement that payments were for child support, missing account numbers, transposed parties, or an order that included only a partial scan of a document it incorporated.[7]

An example of a clerical error involving a divorce settlement agreement is *Delaup v. Delaup*, 917 S.W.2d 411 (Tex. App.—Houston [14th Dist.] 1996, no writ). In *Delaup*, we upheld the granting of a judgment nunc pro tunc where "the trial court adopted the agreed settlement read into the record as the judgment of the court." *Id.* at 413. "The judge rendered his decision orally, on the record, announcing, '[T]he divorce is granted and all matters subject to the agreement are approved and so ordered and that's the order of the court.'" *Id.* Since the final written judgment omitted several key aspects of the agreed settlement, it incorrectly stated the

---

[7] *See In re A.M.C.*, 491 S.W.3d at 67–68 (clerical error where scanner failed "to pick up the entire page of the enforcement order"); *In re M.V.*, No. 14-08-00418-CV, 2009 WL 6407539, at *2 (Tex. App.—Houston [14th Dist.] Sept. 1, 2009, no pet.) (mem. op.) (nunc pro tunc decree properly corrected amount of $500 monthly child support missing from judgment where docket sheet notation included $500 amount); *Osojie v. Osojie*, No. 03-08-00688-CV, 2009 WL 2902743, at *9 (Tex. App.—Austin Aug. 27, 2009, no pet.) (mem. op.) (nunc pro tunc decree properly corrected one account number to three account numbers for $37,180.22 of husband's Rollover IRA awarded to wife in divorce decree); *Fiske v. Fiske*, No. 01–03–00048–CV, 2004 WL 1847368, at *5 (Tex. App.—Houston [1st Dist.] Aug. 19, 2004, no pet.) (mem. op.) (nunc pro tunc judgment properly corrected award of "$50,00.00" in damages to read "$50,000.00"); *In re Taylor*, 113 S.W.3d 385, 393 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("[A] judgment nunc pro tunc may be issued to correct the date an order was signed if the original date is shown to have been incorrect."); *Dickens v. Willis*, 957 S.W.2d 657, 659–60 (Tex. App.—Austin 1997, no pet.) (clerical error where divorce decree misidentified petitioner and respondent, thus ordering wrong party to pay child support); *Holway v. Holway*, 506 S.W.2d 643, 645–46 (Tex. Civ. App.—El Paso 1974, no writ) (nunc pro tunc judgment properly corrected failure to state monthly payments were for child support as supported by docket sheet notation).

judgment rendered. *Id.*; *see also Ledbetter v. Ledbetter*, 390 S.W.2d 403, 404–05 (Tex. Civ. App.—Waco 1965, writ dism'd) (nunc pro tunc judgment properly corrected omission of two lots from legal description of certain property awarded to husband as part of settlement agreement where original decree recited, "Said Settlement Agreement is therefore approved by the Court as a part of this decree.").

### 3. Judicial errors

In a nunc pro tunc judgment, the trial court only can correct the entry of a final written judgment that incorrectly states the judgment actually rendered. *Escobar*, 711 S.W.2d at 231–32. Even if the court renders judgment incorrectly, it cannot, nunc pro tunc, alter a written judgment that precisely reflects the incorrect rendition. *Id.* at 232. That is, a nunc pro tunc judgment may not be used to correct judicial errors. *Id.* at 231. A judicial error occurs in the rendering, rather than the entering, of a judgment and arises from a mistake of law or fact that requires judicial reasoning to fix. *Id.*; *see also In re A.M.C.*, 491 S.W.3d at 67. "Substantive changes to an order are judicial errors that cannot be remedied through a nunc pro tunc judgment." *Matter of Marriage of Bowe & Perry*, No. 14-16-00551-CV, 2017 WL 6102779, at *5 (Tex. App.—Houston [14th Dist.] Dec. 7, 2017, no pet.). (mem. op.) (six later orders which deleted factual finding paragraphs from earlier order and changed legal basis for trial court's dismissal of father's claims were substantive alternations that exceeded scope of nunc pro tunc judgment).[8]

---

[8] *See also Mathes v. Kelton*, 569 S.W.2d 876, 878 (Tex. 1978) (nunc pro tunc judgment that changed party entitled to possession of ring "materially altered the substance" of prior order and "[could] not be validly accomplished"); *Hernandez v. Lopez*, 288 S.W.3d 180, 185–88 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (nunc pro tunc judgment that changed year of confirmation of father's child support arrearage from 2004 to 2003 created new payment obligation not present in original agreed order and impermissibly corrected judicial error); *Whitmire v. Lilly*, No. 14–07–00993–CV, 2008 WL 4308557, at *2 (Tex. App.—Houston [14th Dist.] Aug. 28, 2008, no pet.) (mem. op.) (nunc pro tunc judgment that "delete[d] several portions of the court's first judgment" impermissibly corrected judicial error); *Gilchrist v. Gilchrist*, No. 13-07-00448-CV,

An example of a judicial error involving an MSA is *Montemayor v. Garcia*, No. 13-09-00342-CV, 2011 WL 578603 (Tex. App.—Corpus Christi Feb. 17, 2011, no pet.) (mem. op.). In *Montemayor*, the parties entered an MSA that included terms settling the parent-child relationship. *Id.* at *1. The original final decree stated that the mother had the right to designate the primary residence of the children without regard to geographic location. *Id.* The trial court granted the father's nunc pro tunc motion on the basis that the parties instead had agreed in the MSA that the mother was limited to residing in Hidalgo County. *Id.* The court of appeals reversed the nunc pro tunc decree as void and reinstated the original decree. *Id.* at *2–3. In doing so, the *Montemayor* court noted that "the original written judgment precisely reflected the allegedly incorrect rendition of the judgment, making it expressly clear that [the mother's] right to determine the residence of the children was 'without regard to geographic location.'" *Id.* at *2. In addition, the change made was a "substantive one" where the "original judgment placed no restriction on [the mother's] right to determine the residence of the children." *Id.*[9]

---

2008 WL 2525611, at *1–2 (Tex. App.—Corpus Christi June 26, 2008, no pet.) (mem. op.) (nunc pro tunc judgment that changed party entitled to bank account impermissibly corrected judicial error); *Roman Catholic Diocese of Dall. v. Cty. of Dall. Tax Collector*, 228 S.W.3d 475, 479 (Tex. App.—Dallas 2007, no pet.) (nunc pro tunc judgment that "impos[ed] an additional two years of tax liability" impermissibly corrected judicial error); *Riner v. Briargrove Park Prop. Owners*, 976 S.W.2d 680, 682–83 (Tex. App.—Houston [1st Dist.] 1997, no writ) (nunc pro tunc judgment was improper because its modifications were substantive and material, including reinstating lien to pay for attorney's fees); *McLeod v. McLeod*, 752 S.W.2d 676, 679 (Tex. App.—Dallas 1988, no writ) (nunc pro tunc judgment impermissible where "changing the November 15, 1985 order from one ordering payment of child support arrearages to one ordering the payment of retroactive child support materially altered the substance of the November 15, 1985 order").

[9] Likewise, in an unpublished opinion, the First Court of Appeals reversed a nunc pro tunc decree and reinstated an agreed final decree of divorce in *Paisley v. Paisley*, No. 01-99-00664-CV, 2000 WL 19660 (Tex. App.—Houston [1st Dist.] Jan. 13, 2000, pet. denied) (op. on reh'g, not designated for publication). There, the parties entered and filed an MSA that provided the father would pay private school tuition as additional child support. *Id.* at *1. The parties signed, agreeing as to both form and substance, a divorce decree that omitted the tuition term. *Id.* The mother filed a motion for judgment nunc pro tunc on the basis that the divorce decree was incorrect because it

### 4. Void judgments

An attempted nunc pro tunc judgment rendered to correct a judicial error after plenary power has expired is void for lack of jurisdiction. *See State ex. rel Latty v. Owens*, 907 S.W.2d 484, 486 (Tex. 1995) (per curiam); *Dikeman v. Snell*, 490 S.W.2d 183, 186 (Tex. 1973); *In re A.M.C.*, 491 S.W.3d at 67 & n.5. A litigant may attack a void judgment either directly or collaterally. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012). After expiration of plenary power, a trial court still may sign an order declaring a prior judgment or order to be void because the trial court signed the prior judgment or order after expiration of the court's plenary power. *See* Tex. R. Civ. P. 329b(f). Although it is wholly unnecessary to appeal from a void judgment, an appeal may be taken and the appellate court may declare the judgment void. *State ex rel. Latty*, 907 S.W.2d at 486. A litigant also may seek and is entitled to mandamus relief from a void judgment. *In re Martinez*, 478 S.W.3d 123, 128 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

### 5. Standard of review

Whether the trial court previously rendered judgment and the contents of the judgment are fact questions for the trial court, but whether an error in the judgment is judicial or clerical is a question of law we review de novo. *See Escobar*, 711 S.W.2d at 232; *In re A.M.C.*, 491 S.W.3d at 67. When deciding whether a correction is of a judicial or a clerical error, we look to the judgment actually rendered, not the judgment that should or might have been rendered. *See Escobar*, 711 S.W.2d at 231; *In re A.M.C.*, 491 S.W.3d at 67. Where, as here, no findings of fact or conclusions

---

failed to reflect all the terms of the MSA. *Id.* The trial court granted her motion. *Id.* The *Paisley* court concluded that the error was a judicial error where the terms of the MSA were not read into the record and "[t]he only indication of the judgment rendered by the trial court is the written judgment that was signed by the court and entered into the record," which "neither reference[d] nor incorporate[d] the mediated agreement." *Id.* at *2.

of law were filed, the trial court's judgment implies all findings of fact necessary to support it. *Pharo v. Chambers Cty.*, 922 S.W.2d 945, 948 (Tex. 1996). We must defer to the trial court's factual determinations that a judgment has been rendered and its contents if some probative evidence supports them but are not bound by the trial court's legal determination regarding the nature of any error in the original judgment. *Escobar*, 711 S.W.2d at 232; *In re A.M.C.*, 491 S.W.3d at 67. Evidence supporting the trial court's fact-finding may be in the form of oral testimony of witnesses, written documents, the court's docket, and the judge's personal recollection. *In re A.M.C.*, 491 S.W.3d at 67.

## B. The judgment nunc pro tunc impermissibly corrected judicial errors.

In his three related issues, Charles argues that the nunc pro tunc order and judgment are void—and the trial court erred in refusing to set aside its void nunc pro tunc order and judgment—because they "made substantive judicial changes to the trial court's November 23, 2015 Final Decree of Divorce after the court lost its plenary power."

The parties do not dispute that the trial court's plenary power expired on December 23, 2015—therefore, it was no longer able to correct a judicial error after this date. *See* Tex. R. Civ. P. 329b(d). Having reviewed the record, we conclude there is no evidence to show that the trial court rendered a judgment different from the final divorce decree signed on November 23, 2015. Because the May 4, 2016 judgment nunc pro tunc changed the substantive rights of the parties under the decree and corrected judicial, and not clerical, errors, the judgment nunc pro tunc is void.

In her motion for judgment nunc pro tunc, Lori requested corrections to the agreed final divorce decree because the judgment was "incorrect" when compared with the parties' September 28, 2015 MSA. Even if the trial court incorrectly renders judgment, it cannot, on a nunc pro tunc motion, alter a written judgment that

10

precisely reflects the incorrect rendition. *Escobar*, 71 S.W.2d at 231–32. When we consider the judgment actually rendered by the trial court as to the property division of the marital estate here, we conclude that the original written judgment precisely reflected the allegedly incorrect rendition of the judgment. *See Montemayor*, 2011 WL 578603, at *2. The agreed final divorce decree made it expressly clear that Charles was awarded as his sole and separate property:

> All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the husband's past, present, or future employment.

The original judgment also made it expressly clear that Lori was awarded as her sole and separate property "Seven Hundred Fifty Dollars ($750.00) payable by CHARLES[] to LORI[] on the day of divorce." The original judgment was agreed to in form and substance by both parties, did not state that it was approving or incorporating the MSA, and made it expressly clear that to the extent any conflict existed between the decree and the September 28, 2015 MSA, the November 23, 2015 final divorce decree controlled.

The transcript of the November 20, 2015 divorce prove-up hearing does not otherwise support that the trial court at that time rendered judgment on the MSA, i.e., the $201,000 401(k) award and the twelve $750 payments. The only term of the MSA related to property division that Lori testified to was that Charles would receive "the home." The MSA was not read into the record. Lori asked the trial court "to approve [her] divorce" and did not mention the MSA. The trial court stated: "I am going to grant the petition for divorce, as well as the request for a name change." The trial court did not mention or approve the parties' MSA. Consistent

with the transcript, the notation in the trial judge's docket sheet stated, "Petition for Divorce proved-up. Entry date 12/4/15."[10] Nowhere did the trial court express that judgment on the MSA was granted, or otherwise ordered, rendered, pronounced, concluded, final, or complete.

At the hearing on Charles's motion to set aside, the trial judge acknowledged she did not announce at the prove-up hearing she was "adopting the agreements made by the parties" or that she was "render[ing] judgment on the mediated settlement agreement." The trial judge stated that she did not think she had to: "I think that the transcript from the [prove-up]—with the parties agreeing that the property division was set out in the MSA is sufficient." However, "[w]hat the trial court believes to be the legal effect of its act is not dispositive" on rendition. *Inwood Forest Cmty. Improvement Ass'n v. Arce*, 485 S.W.3d 65, 71 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (citing *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 858 (Tex. 1995)); *In re K.N.M.*, No. 2-08-308-CV, 2009 WL 2196125, at *6 (Tex. App.—Fort Worth July 23, 2009, no pet.) (mem. op.) (same); *see Araujo v. Araujo*, 493 S.W.3d 232, 237 (Tex. App.—San Antonio 2016, no pet.) ("The fact that a trial court may believe it rendered judgment on an earlier date is not dispositive."). Rather, rendition is a present act and the words expressed by the trial court must clearly indicate the intent to render immediate judgment at that time, not in the future.[11] *See S & A Rest.*, 892 S.W.2d at 858.

---

[10] Regarding the division of community property, in her petition, Lori requested that the trial court divide the estate in a manner deemed right and just.

[11] *Compare, e.g., State v. Naylor*, 466 S.W.3d 783, 789 (Tex. 2015) (divorce proceeding was rendition where terms of settlement agreement read into record and trial court announced, "The divorce is granted pursuant to the agreement you have recited into the record."), *Blackburn v. Blackburn*, No. 02-12-00369-CV, 2015 WL 2169505, at *6–7 (Tex. App.—Fort Worth May 7, 2015, no pet.) (mem. op.) (divorce proceeding was rendition where wife requested trial court approve the MSA; trial judge stated, "All right. I'm going to grant the divorce pursuant to the terms and provisions of the [MSA] that's been stated herein today"; docket notation stated,

Under these circumstances, we conclude that the trial court did not—at the prove-up hearing or otherwise—render judgment on the terms of the $201,000 401(k) award and the twelve $750 payments as contained in the parties' September 28, 2015 MSA.

To the extent Charles's or Lori's attorney may have committed drafting errors that became a part of the trial court's judgment as rendered in the final divorce decree, such mistakes constitute judicial, not clerical, error.[12] *See In re Daredia*, 317 S.W.3d 247, 249–50 (Tex. 2010) (per curiam) ("[P]rovisions alleged to have been inserted by mistake of the attorney nevertheless become a part of the court's judgment and therefore are judicial errors when thus rendered in writing by the court." (citing *Dikeman*, 490 S.W.2d at 185–86)); *see also, e.g., In re D & KW*

"Divorce granted pursuant to mediated Stlmt. Agreement, Decree to be signed upon presentment"; and final divorce decree stated divorce was "judicially PRONOUNCED AND RENDERED" on date of prove-up hearing), *Maldonado v. Rosario*, No. 01-12-01071-CV, 2013 WL 1316385, at *3 (Tex. App.—Houston [1st Dist.] Apr. 2, 2013, no pet.) (mem. op.) (per curiam) (divorce proceeding was rendition where trial court stated that it reviewed and accepted MSA and "this divorce is granted," and docket entry stated, "MSA, divorce granted"), *In re Marriage of Joyner*, 196 S.W.3d 883, 887–88 (Tex. App.—Texarkana 2006, pet. denied) (divorce proceeding was rendition; "most telling were the trial court's comments . . . 'I'm going to rule, and then I'll allow y'all to make of record your exceptions to my rulings. And in so doing, you can ask for a, I guess in effect, a judgment N.O.V., a motion for rehearing, or whatever you want to call it, and tell me why you are entitled to it.'"), *and Delaup*, 917 S.W.2d at 413 (divorce proceeding was rendition where parties testified regarding terms of settlement; terms were read into record; and at that time trial judge stated, "[T]he divorce is granted and all matters subject to the agreement are approved and so ordered and that's the order of the Court."), *with Molina v. Molina*, 531 S.W.3d 211, 217 (Tex. App.—San Antonio 2017, no pet.) (divorce proceeding was not rendition as to ranch property term missing from final divorce decree where nothing in words used "clearly reflect[ed] the trial court's present intent to render judgment").

[12] According to counsel for Lori, as stated in Lori's supplemental brief regarding the nunc pro tunc proceedings, it was Charles's attorney who "filed a draft copy of the order that did not contain the entire agreement." In his motion to set aside the May 4, 2016 judgment nunc pro tunc as void, or alternatively petition for bill of review and declaratory judgment to set aside the judgment as void, and at the hearing, counsel for Charles asserted that it was Lori's attorney who drafted the agreed divorce decree and "sent it over." The record reflects that two versions of the proposed final decree of divorce were filed. Neither version, however, included the $201,000 401(k) award or the twelve monthly $750 payments.

*Family, L.P.*, No. 01-11-00276-CV, 2012 WL 3252683, at *6 (Tex. App.—Houston [1st Dist.] Aug. 9, 2012, no pet.) (mem. op.) (citing *In re Daredia*, 317 S.W.3d at 250); *Am.'s Favorite Chicken Co. v. Galvan*, 897 S.W.2d 874, 879 (Tex. App.—San Antonio 1995, writ denied) (citing *Dikeman*, 490 S.W.2d at 185–86).

Moreover, the changes to correct the division of property made in the judgment nunc pro tunc were substantive ones.[13]  Instead of Charles receiving all sums of his employment benefits per the original decree, the judgment nunc pro tunc awarded Lori $201,000 of Charles's Celanese retirement savings plan as of September 28, 2015.  Instead of Charles owing Lori one payment of $750 per the original decree, the judgment nunc pro tunc awarded Lori a year's worth of monthly $750 payments from Charles totaling $9,000.

Lori does not "substantially disagree" with the "fairly simple" record.  Nor does she insist that her requested changes were clerical.  Rather, she contends that under sections 6.602[14] and 153.0071[15] of the Texas Family Code, she has a right to

---

[13] *See Shanks v. Treadway*, 110 S.W.3d 444, 446, 449 (Tex. 2003) (changing original decree which awarded wife twenty-five percent of husband's total retirement benefits without regard to date to same percentage but as valued at time of divorce was substantive; husband's "remedy for a substantive error of law by the trial court was by direct appeal, and he cannot now collaterally attack the judgment"); *Watson v. Heaton*, No. 14-09-00717-CV, 2010 WL 5132565, at *2 (Tex. App.—Houston [14th Dist.] Dec. 14, 2010, no pet.) (mem. op.) (changing original decree which awarded husband house as his sole and separate property to grant wife possessory interest in house and order husband to vacate was substantive); *Gilchrist*, 2008 WL 2525611, at *2 (changing final divorce decree to award bank account to husband instead of wife was substantive); *Marshall v. Priess*, 99 S.W.3d 150, 160 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (concluding that "the addition of the requirement that [wife] pay the survivor benefit premium constitutes a substantive change" to property division).

[14] *See* Tex. Fam. Code Ann. § 6.602(c) (West 2006) ("If a mediated settlement agreement meets the requirements of this section, a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.").

[15] *See* Tex. Fam. Code Ann. § 153.0071(e) (West 2014 & Supp. 2017) ("If a mediated settlement agreement meets the requirements of Subsection (d), a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.").

a judgment that conforms to the MSA. Lori has not cited, nor have we found, any authority supporting the proposition that a trial court otherwise retains jurisdiction beyond its plenary power to make substantive changes to its final judgment and correct judicial errors involving the failure to track terms from an MSA.[16] Although Lori may have been entitled to secure rendition of and any substantive correction of and modification to the judgment in her divorce action in accordance with the MSA while the trial court retained jurisdiction, such entitlement expired with the expiration of the trial court's plenary power. *See Montemayor*, 2011 WL 578603, at *3 n.5 (judgment nunc pro tunc was incorrect vehicle by which to seek amendment of original decree to comply with MSA).[17]

We conclude that the May 4, 2016 judgment nunc pro tunc is void. We sustain Charles's issues on appeal. Because we address and remedy these issues by appeal, we deny Charles's petition for writ of mandamus as moot. *See State ex rel. Latty*, 907 S.W.2d at 486; *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

### III. CONCLUSION

Accordingly, we reverse the trial court's judgment nunc pro tunc and render

---

[16] Were this the case, presumably a party also would not be required to preserve an appellate argument that a judgment failed to conform to an MSA. However, Texas appellate courts, including this one, consistently have held otherwise. *See In re M.L.R.*, No. 05-15-00647-CV, 2016 WL 5791530, at *4 (Tex. App.—Dallas Oct. 4, 2016, no pet.); *Brantley v. Brantley*, No. 14-11-00583-CV, 2012 WL 727700, at *2–3 (Tex. App.—Houston [14th Dist.] Mar. 6, 2012, no pet.) (mem. op.); *Murphy v. Leveille*, No. 2-08-130-CV, 2009 WL 2619857, at *2 (Tex. App.—Fort Worth Aug. 26, 2009, no pet.) (mem. op.) (per curiam); *Barina v. Barina*, No. 03-08-00341-CV, 2008 WL 4951224, at *2–3 (Tex. App.—Austin Nov. 21, 2008, no pet.) (mem. op.); *cf. Matter of Marriage of Harrison*, —S.W.3d—, No. 14-15-00430-CV, 2018 WL 2926268, at *29 (Tex. App.—Houston [14th Dist.] June 12, 2018, no pet. h.) (indicating that party would need to "properly and timely present[]" any motion to enter judgment on MSA in trial court for purposes of preservation).

[17] *See also Paisley*, 2000 WL 19660, at *2 (rejecting wife's argument that she had a right to judgment on MSA under sections 6.602 and 153.0071 of Family Code despite expiration of plenary power).

15

judgment reinstating the original agreed final decree of divorce dated November 23, 2015.

/s/    Marc W. Brown
Justice

Panel consists of Justices Jamison, Donovan, and Brown.