**Affirmed in Part, Reversed and Rendered in Part, and Memorandum Opinion filed January 12, 2023.**



In The

# Fourteenth Court of Appeals

### NO. 14-21-00483-CV

**UCHENNA HELEN  OKAFOR, Appellant**

**V.**

**CHRISTOPHER OKAFOR, Appellee**

**On Appeal from the 246th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-72154**

## MEMORANDUM  OPINION

Appellant Uchenna Helen Okafor challenges the trial court's Agreed Final Decree of Divorce Nunc Pro Tunc, arguing that it is void for lack of jurisdiction. We affirm in part and reverse and render in part.

### BACKGROUND

Appellee Christopher Okafor filed an original petition for divorce in October 2017, and Uchenna filed an original counter-petition for divorce in May 2018.

Christopher filed an inventory and appraisement in September 2018; Uchenna filed an inventory and appraisement as well as a proposed property division a week later. Christopher then filed another inventory and appraisement and a first amended inventory and appraisement.

On September 26, 2018, the trial court held a prove-up hearing on the divorce. The trial court stated: "This morning off the Record the parties with the assistance of their counsel have been discussing an agreement with regards to the division of property in this divorce case. And I believe that the parties have reached an agreement and so I'm going to have the . . . [Christopher]'s counsel prove up the divorce and put on the Record what that agreement is." Christopher's counsel elicited testimony from Christopher that he and his wife "have an agreement that all property that is in the United States is to be divided 50/50" and that the agreement "is a just and right division of the marital estate." Uchenna also testified that she agreed with her husband that "as far as the division of the community estate . . . everything that is in the United States" should be divided "50/50." After the parties completed their testimony, the trial court made the following statements:

> THE COURT: Okay. And to further clarify the parties' agreement on the Record the Court is declining to divided [sic] any property in Nigeria or any properties out of the United States. The Court is putting a stipulation on the Record a finding on the Record that any assets that were purchased during this marriage is [sic] considered to be community property in the State of Texas and as such should be divided 50/50. However[,] these properties are not subject to the jurisdiction of this court and shall be divided and handled in Nigeria.
>
> Okay. All right. There is a house that was purchased in Richmond, Texas. The Court declines jurisdiction to divide that asset in this divorce as well as that property is not titled or deeded to either one of the parties or in this divorce case. Any claim to that property

2

can be brought probably in a separate action but based on the documents provided from the owner of that property and the funds used to wire transfer and purchase that property and the deed on that property this Court is declining to divide that asset as part of this divorce.

There are vehicles that are listed in the proposed property division. If the parties cannot agree as to which vehicle goes to which party. They look all about the same value. They look pretty equivalent in value. The Court will order all of them sold and the proceeds to be divided 50/50.

With regards to the property located at 8802 Pecan Place Drive that real estate will be ordered to be sold and proceeds will be divided 50/50. And I'm ordering that based on your agreement and your stipulation to divide the assets 50-50. I can't take a chain saw and cut it in half. So I'm clarifying your agreement and adding some terms that will be enforceable regarding your agreement. The 401K and IRAs, and bank accounts. We are discussing all financial accounts, bank accounts, et cetera, part of this agreement, okay.

If there is any question regarding the drafting of this agreement the Court will set this matter for entry 3 weeks from today. Does that give you guys enough time?

[CHRISTOPHER'S COUNSEL]: Yes, your Honor.

THE COURT: October 17, 2018 at 8:30 a.m. The Court does find that your marriage has become insupportable. I am granting your divorce. I'm granting judgment on your agreements that were read into the Record and adopting them as this Court's rendition. I find that those agreements are a just and right division of the estate, and I'll see y'all October 17, 2018.

Anything else? We are off the Record.

(Discussion had off the Record.)

THE COURT: Back on the Record.

There are 8 medallions that are possessed or owned as part of a taxi cab business that the husband has managing or running. The husband is going to produce the documentation regarding those medallions at least five days before the entry of this order. Any documentation showing that the medallions were acquired prior to the date of the

3

parties' marriage those medallions stipulated by agreement to be his separate property.

Any of the medallions that were acquired or purchased after the date of marriage have been stipulated to be community property and divided 50/50. Half to each party.

Anything else? Let's go off the Record.

Despite the court's statement that agreements were read into the record, this did not occur.

The trial court signed a Final Decree of Divorce on December 13, 2018 (the "Original Decree"). Among other things, the decree provides that (1) the parties each get 50% of "all property located in Nigeria" including buildings, bank accounts and investments; (2) the parties each get 50% of all cash and cash in bank accounts in both parties' name; (3) Christopher gets all sums of cash in his possession or subject to his control; (4) the parties each get 50% of all IRA bank accounts "in parties' names" and of Uchenna's 401k; (5) each party gets four of the eight taxi medallions valued at $45,000 "together with all the vehicles associated with the Medallions"; (6) the parties each get 50% of the sale proceeds of their home located at 8802 Pecan Place Drive (the "Pecan Property") to be sold under terms and conditions specified in the decree; (7) Uchenna gets retirement accounts, pensions, annuities, and annuity life insurance benefits in her name; and (8) "[a]ll sums . . . and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of [Uchenna]'s past, present, or future employment."

Christopher filed a motion for new trial on January 11, 2019. Three days later, he filed a Motion for New Trial and in the alternative Reform the Judgment to Conform to the Rendition. The court signed a Reformed Final Decree of

4

Divorce on December 23, 2019. In January 2020, Uchenna filed a Motion to set aside the Reformed Final Decree of Divorce and Declare the Reformed Final Decree of Divorce Void. Christopher filed a response to Uchenna's motion and, alternatively, a motion for a final decree of divorce nunc pro tunc. On March 10, 2020, the trial court signed an order granting Uchenna's motion and declaring the Reformed Final Decree of Divorce to be void.

Christopher filed an Amended Motion for Judgment Nunc Pro Tunc in November 2020. A few weeks later, Uchenna filed a response. The trial court held a hearing on Christopher's motion on January 27, 2021. However, the hearing was not held before the same judge who presided over the prove-up hearing, rendered judgment, and signed the Original Decree. At the hearing, Christopher argued that his proposed final decree of divorce nunc pro tunc properly corrects clerical errors because the Original Decree incorrectly included in its "50/50 division" community property in Nigeria and failed to include "all the community properties in the United States" contrary to the trial court's rendition. He argued that "it was specifically stated by the Judge and rendered by the Judge that no property outside — specifically Nigeria, should be provided because there was no jurisdiction" and the court also "stated that all properties, community properties in this country should be divided 50/50."

The trial court took a short recess and instructed the parties to review the Original Decree and Christopher's proposed nunc pro tunc decree "and figure out what the points of contention are that you need the Court to make a determination on, okay, keeping in mind the prevailing case law regarding judicial and clerical errors." The court asked the parties "to make a good-faith effort in discussing this and reaching a resolution." The parties could not reach a resolution. Uchenna continued to "contest the entry of a nunc pro tunc other than the provision dealing

with the Nigerian property." The trial court attempted to go through the proposed nunc pro tunc order line by line but then stated, "I'm going to stop this hearing right now and you-all are going to have to come back." The docket sheet states: "Court finds the divorce decree contains clerical errors, not judicial errors, and therefore, the motion judgment nunc pro tunc is granted."

On March 10, 2021, Christopher filed another proposed divorce decree nunc pro tunc. Twenty days later, Uchenna filed a proposed nunc pro tunc decree. On May 7, 2021, Christopher filed another proposed divorce decree nunc pro tunc. That same day, the trial court held a hearing "on a contested entry" because the trial court previously had "granted the request for a nunc pro tunc, but [the parties] have a disagreement as to what should be done in the nunc pro tunc. So, [there are] competing orders." Each party argued in favor of the trial court signing their respective proposed decree, especially focusing on whether the nunc pro tunc decree should include a $45,000 value for the parties' taxi medallions as provided in the Original Decree when the trial court in its rendition did not specify a value. After hearing the parties' arguments, the trial court stated:

> THE COURT: What I'm going to have you-all do because I don't have all day. I have four cases waiting on me right now. Each side will review the proposed order of the other side. On the submission docket, submit to the Court your reasoning for objecting to whatever the language is in that order. I'm going to review both orders. I will if I have to make some corrections to one or just reject both of them and do it all myself, I will, but I need that submitted. I need — you'll get a week. So, you'll have a week to submit this information to the Court. If you have arguments that you want to submit as well[,] you can do that. I'll give you ten days. So, that will give you some time to submit your argument against the other side as well.

On May 13, 2021, Uchenna filed a Response to Christopher Okafor's Request to Enter Final Decree of Divorce Nunc Pro Tunc filed 5-7-2021 and per the Court's Instruction, Opposition to Entry of Same and Request in Support of Respondent's

Proposed Final Decree of Divorce filed 3-30-2021. Three days later, Christopher filed a Proposed Agreed Final Decree of Divorce Nunc Pro Tunc and a Motion to Sign a Proposed Petitioner's Order Granting Petitioner's Motion for Judgment Nunc Pro Tunc and Petitioner's Agreed Final Decree Nunc Pro Tunc filed May 14, 2021.

On July 26, 2021, the trial court signed an order granting Christopher's Motion for Judgment Nunc Pro Tunc. On August 15, 2021, the trial court signed an Agreed Final Decree of Divorce Nunc Pro Tunc (the "Nunc Pro Tunc Decree"). Among other things, the decree (1) does not contain any provision dividing the parties' property in Nigeria; (2) does not contain a value for the taxi medallions; (3) does not contain the terms and conditions specified for the sale of the Pecan Property; and (4) divides the parties' property 50/50, including property that was given only to one party in the Original Decree, *i.e.*, as of the date of divorce the parties each get 50% of (a) all sums of cash in Christopher's possession or subject to his control and all sums of cash in Uchenna's possession or subject to her control, (b) all IRA bank accounts "in parties' names", (c) retirement accounts, pensions, annuities, annuity life insurance benefits in Uchenna's or Christopher's name, (d) all cash and cash in bank accounts in both parties' names, and (e) "[a]ll sums . . . and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits accrued during the marriage and existing by reason of [Uchenna's and Christoper's] employment."

Uchenna filed a timely notice of appeal.

## ANALYSIS

Uchenna presents one issue on appeal contending that "the nunc pro tunc

order signed August 15, 2021 is void for lack of jurisdiction" because it "makes substantive changes to correct a judicial error and was entered after the court lost plenary power."

## I.  Governing Law and Standard of Review

We begin our analysis by setting out the governing law and standard of review.

### *Plenary Power*

A trial court has "plenary power to . . . vacate, modify, correct, or reform [its] judgment within thirty days after the judgment is signed."  Tex. R. Civ. P. 329b(d); *In re A.M.C.*, 491 S.W.3d 62, 66 (Tex. App.—Houston [14th Dist.] 2016, no pet.).  Once plenary power has expired, a trial court's jurisdiction cannot be vested by agreement or waiver.  *In re Marriage of Russell*, 556 S.W.3d 451, 454 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see also In re Vaishangi, Inc.*, 442 S.W.3d 256, 260-61 (Tex. 2014) (orig. proceeding) (per curiam).

After the trial court's plenary power expires, it may not set aside its judgment except by timely bill of review.  Tex. R. Civ. P. 329b(f); *In re Marriage of Russell*, 556 S.W.3d at 454; *see also King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).  However, a nunc pro tunc judgment permits the trial court to "at any time correct a clerical error in the record of a judgment."  Tex. R. Civ. P. 329b(f) (citing Tex. R. Civ. P. 316 ("Clerical mistakes in the record of any judgment may be corrected by the judge in open court according to the truth or justice of the case . . . .")).

### *Clerical Errors versus Judicial Errors*

A clerical error is a discrepancy between the entry of a judgment in the record and the judgment that was actually rendered.  *See Escobar v. Escobar*, 711

S.W.2d 230, 231-32 (Tex. 1986); *In re A.M.C.*, 491 S.W.3d at 67.  A clerical error does not result from judicial reasoning or determination.  *Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986) (per curiam); *In re Marriage of Russell*, 556 S.W.3d at 455.  If the same trial judge who signed the original judgment also signed an order granting the subsequent nunc pro tunc motion, we presume that the judge's recollection supports the finding of a clerical error.  *In re A.M.C.*, 491 S.W.3d at 67.  Because the same judge did not sign the subsequent nunc pro tunc orders, the presumption does not apply to our analysis.

In a nunc pro tunc judgment, the trial court only can correct the entry of a final written judgment that incorrectly states the judgment actually rendered. *Escobar*, 711 S.W.2d at 231-32; *In re Marriage of Russell*, 556 S.W.3d at 456. Even if the court renders judgment incorrectly, it cannot via judgment nunc pro tunc alter a written judgment that precisely reflects the incorrect rendition. *Escobar*, 711 S.W.2d at 232; *In re Marriage of Russell*, 556 S.W.3d at 456.  That is, a nunc pro tunc judgment may not be used to correct judicial errors.  *Escobar*, 711 S.W.2d at 231.  A judicial error occurs in the rendering, rather than the entering, of a judgment and arises from a mistake of law or fact that requires judicial reasoning to fix.  *Id.*; *In re Marriage of Russell*, 556 S.W.3d at 456.

"Substantive changes to an order are judicial errors that cannot be remedied through a nunc pro tunc judgment."  *In re Marriage of Bowe & Perry*, No. 14-16-00551-CV, 2017 WL 6102779, at *5 (Tex. App.—Houston [14th Dist.] Dec. 7, 2017, no pet.) (mem. op.) (citing *Mathes v. Kelton*, 569 S.W.2d 876, 878 (Tex. 1978) (a nunc pro tunc judgment that changed the party entitled to possession of certain property "materially altered the substance" of the prior order and "[t]hat change constituted the correction of a judicial error which cannot be validly accomplished by a judgment nunc pro tunc"); *Whitmire v. Lilly*, No. 14-07-00993-

CV, 2008 WL 4308557, at *2 (Tex. App.—Houston [14th Dist.] Aug. 28, 2008, no pet.) (mem. op.) (nunc pro tunc judgment that "delete[d] several portions of the court's first judgment" impermissibly corrected judicial errors)).

### Void Judgments

An attempted nunc pro tunc judgment rendered to correct a judicial error after plenary power has expired is void for lack of jurisdiction. *In re Marriage of Russell*, 556 S.W.3d at 457 (citing *Dikeman v. Snell*, 490 S.W.2d 183, 186 (Tex. 1973)). A litigant may attack a void judgment directly or collaterally. *Id*. (citing *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012)). After plenary power expires, a trial court still may sign an order declaring a prior judgment or order to be void because the trial court signed the prior judgment or order after expiration of the court's plenary power. *Id*. (citing Tex. R. Civ. P. 329b(f)). Even though it is unnecessary to appeal from a void judgment, an appeal may be taken and the appellate court may declare the judgment void. *Id*. (citing *State ex. rel Latty v. Owens*, 907 S.W.2d 484, 486 (Tex. 1995) (per curiam)).

### Standard of Review

Whether the trial court previously rendered judgment and the contents of the judgment are fact questions for the trial court, but whether an error in the judgment is judicial or clerical is a question of law we review *de novo*. *Id*.; *see also Escobar*, 711 S.W.2d at 232. In deciding whether a correction is a judicial or a clerical error, we look to the judgment actually rendered and not the judgment that should or might have been rendered. *In re Marriage of Russell*, 556 S.W.3d at 457; *see also Escobar*, 711 S.W.2d at 231. When, as in this case, no findings of fact or conclusions of law were filed, the trial court's judgment implies all findings of fact necessary to support it. *Pharo v. Chambers Cnty.*, 922 S.W.2d 945, 948 (Tex. 1996); *In re Marriage of Russell*, 556 S.W.3d at 457. We must defer to the trial

10

court's factual determinations that a judgment has been rendered and its contents if some probative evidence supports them, but we are not bound by the trial court's legal determination regarding the nature of any error in the original judgment. *Escobar*, 711 S.W.2d at 232; *In re Marriage of Russell*, 556 S.W.3d at 457. Evidence supporting the trial court's fact finding may be in the form of oral testimony of witnesses, written documents, the court's docket, and the judge's personal recollection. *In re Marriage of Russell*, 556 S.W.3d at 457-58; *In re A.M.C.*, 491 S.W.3d at 67.

## II.    Application

Uchenna contends that the Nunc Pro Tunc Decree signed over two and a half years after the Original Decree and outside of the court's plenary power is void for lack of jurisdiction. In that regard, she states that "[t]he nunc pro tunc order as entered [o]n August 15, 2021 varies from the rendition in that it seeks to 1) divide property that was not divisible by the court and in a different manner than the agreement the parties had reached and 2) avoid following the rendered order with regard to sale of the Pecan Place house."

Uchenna does not provide any argument, citations to the record, or authorities for her first statement that the Nunc Pro Tunc Decree is void because it "varies from the rendition in that it seeks to [] divide property that was not divisible by the court and in a different manner than the agreement the parties had reached." Uchenna neither explains what she means by her statement nor does she point to the record or any sections in the Nunc Pro Tunc Decree she claims divided property that was not divisible or divided property differently from the trial court's rendition so that such sections could not have been corrected as clerical errors in the Nunc Pro Tunc Decree. Uchenna's statement fails to comply with Texas Rule of Appellate Procedure 38.1(i) requiring that an appellant's "brief must contain a

11

clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *See* Tex. R. App. P. 38.1(i).

Additionally, we note that Uchenna asked the trial court to sign her proposed final decree of divorce nunc pro tunc which contained 50/50 division of property sections that were substantially similarly worded as the sections in the Nunc Pro Tunc Decree the trial court signed. Although the numerous 50/50 property division sections in Uchenna's proposed decree were not listed in the same order as the corresponding ones in the Nunc Pro Tunc Decree, they nonetheless use very similar language in dividing the property.

We overrule Uchenna's issue with respect to her assertion that the Nunc Pro Tunc Decree is void because it "varies from the rendition in that it seeks to [] divide property that was not divisible by the court and in a different manner than the agreement the parties had reached." *See id.*

We next turn to Uchenna's contention that the Nunc Pro Tunc Decree is void because it "varies from the rendition in that it seeks to . . . avoid following the rendered order with regard to sale of the Pecan Place house." Uchenna argues that "[t]here is no error in the house-sale provisions of the December 13, 2018 order, merely an amplification of the rendition. The time frame for the sale was not specified but clearly was to happen in the immediate aftermath of the order. Appellee has, so far, delayed for three years."

At the trial court's rendition of judgment, it specifically stated:

> With regards to the property located at 8802 Pecan Place Drive that real estate will be ordered to be sold and proceeds will be divided 50/50. And I'm ordering that based on your agreement and your stipulation to divide the assets 50-50. I can't take a chain saw and cut it in half. So I'm clarifying your agreement and adding some terms that will be enforceable regarding your agreement.

12

The Original Decree contains the following terms and conditions regarding the Pecan Property's sale to accomplish the 50/50 division of that property:

**Provisions Dealing with Sale of Residence**

IT IS FURTHER ORDERED AND DECREED that the property and all improvements located thereon at lot 22, block 1, WEST PLACE subdivision, according to the map, plat, or deed records of Harris County, Texas, and more commonly known as 8802 PECAN PLACE DR, HOUSTON TX 77071, HARRIS County, Texas, shall be sold under the following terms and conditions:

1. The parties shall list the property with a duly licensed real estate broker having sales experience in the area where the property is located within thirty days (30) of this order, provided further that the real estate broker shall be an active member in the Multiple Listing Service Board of Realtors.

2. The property shall be sold for a price that is mutually agreeable to Petitioner and Respondent.

3. Petitioner shall continue to make all payments of principal, interest, taxes, and insurance on the property during the pendency of the sale, and Petitioner shall have the exclusive right to enjoy the use and possession of the premises until closing. All maintenance and repairs necessary to keep the property in its present condition shall be paid by Petitioner.

The Nunc Pro Tunc Decree deleted these terms and does not contain any terms or conditions regarding the sale of the Pecan Property to complete the 50/50 division of that property. Considering that the trial court at the September 26, 2018 hearing rendered judgment specifically stating that it would add terms for the Pecan Property's sale and then signed the Original Decree containing terms and conditions regarding how to carry out the sale, deletion of these terms would constitute a substantive change and not the correction of a clerical error. *See Escobar*, 711 S.W.2d at 231-32; *In re Marriage of Russell*, 556 S.W.3d at 455, 460. There is no discrepancy between the trial court's rendition and the signed Original Decree and, thus, no clerical error regarding the sale of the Pecan Property

13

was corrected by nunc pro tunc judgment. *See Escobar*, 711 S.W.2d at 231-32; *In re Marriage of Russell*, 556 S.W.3d at 455, 460; *In re A.M.C.*, 491 S.W.3d at 67.

Accordingly, we sustain Uchenna's issue with respect to her contention that (1) the Original Decree "accurately state[s] the judgment that was rendered on September 26, 2018" regarding the Pecan Property sale; and (2) the Nunc Pro Tunc Decree improperly changes "the rendition in that it seeks to . . . avoid following the rendered order with regard to [the] sale of the Pecan Place house" and does not correct a clerical error.

## CONCLUSION

Having sustained Uchenna's sole issue in part, we reverse that part of the trial court's Agreed Final Decree of Divorce Nunc Pro Tunc that (1) omits the terms and conditions regarding the Pecan Property's sale to complete the 50/50 division of that property as contained in the Original Decree; and (2) orders the sale without terms and conditions. We render judgment reinstating the Original Decree's terms and conditions for the Pecan Property's sale. We affirm the remainder of the Agreed Final Decree of Divorce Nunc Pro Tunc as challenged.

/s/    Meagan Hassan
       Justice

Panel consists of Justices Bourliot, Hassan, and Wilson.

14